**Fill in this information to identify the case:**

Debtor Name  <u>MDMH Partners, LLC</u>

United States Bankruptcy Court for the: <u>Northern District of California</u>

Case number:  <u>23-50817-MEH</u>

☐ Check if this is an amended filing

Official Form 425B

# Disclosure Statement for Small Business under Chapter 11

12/17

## MDMH Partners, LLC's Disclosure Statement, Dated Oct. 25, 2023

 **Table of Contents.**

I. Introduction ........................................................................................................... 3
   A. Purpose of This Document ................................................................................ 3
   B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ............. 3
   C. Disclaimer ....................................................................................................... 4
II. Background .......................................................................................................... 4
   A. Description and History of the Debtor's Business ............................................... 4
   B. Insiders of the Debtor ....................................................................................... 5
   C. Management of the Debtor During the Bankruptcy ............................................ 6
   D. Events Leading to Chapter 11 Filing ................................................................. 6
   E. Significant Events During the Bankruptcy Case ................................................. 6
   F. Projected Recovery of Avoidable Transfers ....................................................... 8
   G. Claims Objections ........................................................................................... 9
   H. Current and Historical Financial Conditions ...................................................... 9
III. Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests ........... 9
   A. What Is the Purpose of the Plan of Reorganization? .......................................... 9
   B. Unclassified Claims ......................................................................................... 9
      1. Administrative expenses, involuntary gap claims, and quarterly and Court fees ........... 10
      2. Priority tax claims ....................................................................................... 10
   C. Classes of Claims and Equity Interests ........................................................... 11
      1. Classes of secured claims ........................................................................... 11
      2. Classes of priority unsecured claims ............................................................ 13
      3. Classes of general unsecured claims ........................................................... 14
      4. Classes of equity interest holders ................................................................ 15
   D. Means of Implementing the Plan ..................................................................... 15
      1. Source of payments .................................................................................... 15
      2. Post-confirmation Management .................................................................... 16
   E. Risk Factors .................................................................................................. 16
   F. Executory Contracts and Unexpired Leases ..................................................... 17
   G. Tax Consequences of Plan ............................................................................ 18
IV. Confirmation Requirements and Procedures ......................................................... 18
   A. Who May Vote or Object ................................................................................. 18
      1. What is an allowed claim or an allowed equity interest? .................................. 19
      2. What is an impaired claim or impaired equity interest? ................................... 19
      3. Who is not entitled to vote ........................................................................... 20
      4. Who can vote in more than one class ............................................................ 20
   B. Votes Necessary to Confirm the Plan .............................................................. 20
      1. Votes necessary for a class to accept the plan ............................................... 20

Case: 23-50817   Doc# 31   Filed: 10/25/23   Entered: 10/25/23 17:35:01   Page 1 of 46

    2. Treatment of non-accepting classes of secured claims, general unsecured  claims, and interests ....................20

C. Liquidation Analysis.................................................................................................................... 21

D. Feasibility................................................................................................................................... 21

    1. Ability to initially fund plan ...................................................................................................... 21

    2. Ability to make future plan payments and operate without further reorganization ....................21

V. Effect of Confirmation of Plan ........................................................................................................22

A. Discharge of Debtor.................................................................................................................... 22

B. Modification of Plan .................................................................................................................... 22

C. Final Decree.............................................................................................................................. 23

VI. Other Plan Provisions ................................................................................................................... 23

Exhibit A:  Copy of Proposed Plan of Reorganization......................................................................... 24

Exhibit B: Identity and Value of Material Assets of Debtor ................................................................. 25

Exhibit C: Prepetition Financial Statements...................................................................................... 26

Exhibit D: [Most Recently Filed Postpetition Operating Report] ......................................................... 27

Exhibit E: Liquidation Analysis ........................................................................................................ 28

Exhibit F: Cash on hand on the effective date of the Plan .................................................................. 29

Exhibit G: Projections of Cash Flow for Post-Confirmation Period ...................................................... 30

    Exhibit H: List of General Unsecured Creditors………………………………………………………. 30

    Exhibit I: Note and Addendum………………………………………………………………………........ 30

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 2 of 46

## ■ I. Introduction

This is the disclosure statement (the "*Disclosure Statement*") in the small business chapter 11 case of MDMH Partners, LLC (the *Debtor*). This Disclosure Statement contains information about the Debtor and describes the Plan dated Oct. 25, 2023 (the "Plan") filed by the Debtor on Oct. 25, 2023.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.

The proposed distributions under the plan are discussed beginning on Page 9 of this Disclosure Statement. General unsecured creditors are classified in Class 2 and will receive a 100% dividend of their allowed claims together with post-confirmation interest to be paid on the latter of the Effective Date or concurrent with the sale of the Property.

### A. Purpose of This Document

This Disclosure Statement describes:

- ■ The Debtor and significant events during the bankruptcy case,
- ■ How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- ■ Who can vote on or object to the Plan,
- ■ What factors the Bankruptcy Court (the *Court*) will consider when deciding whether to confirm the Plan,
- ■ Why The Proponent believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- ■ The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.  A separate order has been entered setting the following information:

- ■ The hearing at which the Court will determine whether to approve this Disclosure Statement will take place on Nov. 30. 2023 at 10:00 AM in Courtroom 11, at the United States Bankruptcy Court, Northern District of California, San Jose Division at 280 So. First St., San Jose, CA 95113.

Deadline for voting to accept or reject the plan:

   If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to The Fuller Law Firm, P.C., 60 No. Keeble Ave. San Jose, CA 95126.  See section IVA below for a discussion of voting eligibility requirements. Your ballot must be received by [ Date to be determined after approval of Disclosure Statement] or it will not be counted.

■  Deadline for objecting to confirmation of the plan.

   Objections to this Disclosure Statement must be filed with the Court and served upon debtor, debtor's counsel, the Office of the United States Trustee, and all parties requesting special notice by Nov. 23, 2023.

■  Identifying of Person to Contact for More Information:

   If you want additional information about the Plan or the voting procedure, you should contact The Fuller Law Firm, P.C. 60 N Keeble Ave. San Jose, CA 95126 at 408-295-5595.

### C. Disclaimer

**The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.**

## II. Background

### A. Description and History of the Debtor's Business

This is a single asset real estate case commenced on July 27, 2023. The Debtor is the owner of 103, 104, 109 and 110 Sporleder Court, Los Gatos, CA (formerly identified as 105 Newell Avenue, Los Gatos, CA 95032 ("Property" hereinafter).  Debtor purchased the Property from Tango Papa Development on March 3, 2022.  Tango Papa Development Company carried back a loan in the original amount of $3,900,000. In Jan. 2023 the parties negotiated

an extension of the note with a $926,000 principal reduction.  However, Tango Papa Development backed out of the extension deal and proceeded with its non-judicial foreclosure process.  The bankruptcy was filed to stay the sale.

Pre-petition ZME Investors Two (Buyer) and Debtor executed a contract ("ZME Agreement") wherein ZME Investors would purchase the Property for $6,000,000. The Buyer made a $3,000,000 pass through as good faith deposit upon execution of an Amendment to the contract.

Pursuant to the terms of the ZME Agreement, Buyer has a due diligence period which ends 15 days following the latter of:

> The Town of Los Gatos approval of the Public Works Improvement Submittal causing the issuance of a permit for the construction of such onsite and offsite improvements as required, or
>
> The Town of Los Gatos approval of four separate working drawings for the construction of the single family homes allowing the issuance of a building permit (s) for the construction of the four approved homes on the project site.

The Closing date is 45 days after the Buyer delivers the Approval Notice (approval of due diligence) to the Seller.

Mason Hammer Builders, whose principals are principals of Buyer, demolished the existing Los Gatos Lodge building on the Property and is owed $597,925 if escrow were not to close (or this amount would be a debit to Seller in escrow).  The Property is now vacant land.

- On or about Oct. 9, 2023 the Town of Los Gatos Public Works approved and issued a grading permit for on-site improvements.  Site work commenced on or about Oct. 24, 2023.
- Public Works approval of off-site improvements remains pending.  The Town has provided comments and Debtor has responded to the comments.

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 5 of 46

- Detailed working drawings for the construction of the four residential structures were submitted
  to the Town of Los Gatos in late 2022.  The applicant has received comments from the Town and
  drawings have been resubmitted.

### B. Insiders of the Debtor
Debtor has 3 members which own equal shares as follows:

> Bennett McClain Shaw 2000 Irrevocable Trust
> Kieran Kelly Shaw 2000 Irrevocable Trust
> Ronan Daniel Shaw 2000 Irrevocable Trust

Daniel Shaw, the designated Responsible Individual for the Debtor and its Manager is the father of the
beneficiaries of the irrevocable Trusts.

### C. Management of the Debtor during the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the only
officers, directors, managers, or other persons in control of the Debtor was Daniel Shaw. The Manager
of the Debtor during Debtor's chapter 11 case has been Daniel Shaw. After the Effective Date of the
order confirming the Plan, Daniel Shaw will continue as the manager of the Debtor.

| Name of Current Members | Position |
|---|---|
| Bennett McClain Shaw 2000 Irrevocable Trust | Member |
| Kieran Kelly Shaw 2000 Irrevocable Trust | Member |
| Ronan Daniel Shaw 2000 Irrevocable Trust | Member |

### D. Events Leading to Chapter 11 Filing

Tango Papa Development was foreclosing on the Property.  The herein case was filed to stay the
sale to gain sufficient time to develop and sell the Property.

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 6 of 46

**E. Significant Events During the Bankruptcy Case**

Debtor and Tango Papa Development, the only secured creditor, have negotiated a resolution intended to resolve their disputes, including the alleged absence of adequate protection. It provides in pertinent part for Debtor, from non-estate funds, to

1.      By Oct. 31, 2023 Debtor pay $1,264,978.26

a.      Pay all interest through Oct. 31, 2023
b.      Pay a $1,050,000 principal pay down
c.      Cure all Property tax arrears
d.      Pay all foreclosure costs

2.      Commencing Nov. 30, 2023, make interest payments on the Note in the amount of $23,750/month representing interest at 10% per annum

3.      By April 30, 2024, pay the principal balance of $2,850,000.

The Plan adopts the settlement agreement.  A copy of the Settlement agreement is attached here to as Exhibit H.

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 7 of 46

**F. Projected Recovery of Avoidable Transfers**

Check one box.

| | |
|---|---|
| ☒ | The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.  Since its formation, Debtor has transferred excess cash to its principals for reinvestment and the principals have funded Debtor as necessary. Debtor contends that these transfers were in the ordinary course of Debtor's business.  Others may disagree. However, there is substantial equity in the Property, the equity position is expected to further increase by October 31, 2023, if Debtor performs to the stipulation, and pursuing any avoidable transfer is not in the interest of the estate because the only general unsecured creditors will be paid in full on close of escrow. |

| | |
|---|---|
| ❑ | The Debtor estimates that up to $_____ may be realized from the |

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 8 of 46

recovery of fraudulent, preferential, or other avoidable transfers. While the results of litigation cannot be predicted with certainty and it is possible that other causes of action may be identified, the following is a summary of the preference, fraudulent conveyance and other avoidance actions filed or expected to be filed in this case:

| Transaction | Defendant | Amount Claimed |
|---|---|---|
|  |  |  |
|  |  |  |

❑    The Debtor has not yet completed its investigation with regard to prepetition transactions. If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

### G. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. Disputed claims are treated in Article 5 of the Plan.

### H. Current and Historical Financial Conditions

The Property does not generate any rent.

The identity and fair market value of the estate's assets are listed in *Exhibit B*.

The Debtor's most recent financial statements issued before bankruptcy, each of which was filed with the Court, are set forth in *Exhibit C*.

Post-petition Operating Report is set forth in Exhibit D

### III. Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests

#### A. What Is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

#### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 9 of 46

required by the Code. Therefore, the Plan Proponent has *not* placed the following claims in any class:

**1. Administrative expenses, involuntary gap claims, and quarterly and Court fees**

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 503(b) of the Code. Administrative expenses include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, and compensation for services and reimbursement of expenses awarded by the court under § 330(a) of the Code. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. Involuntary gap claims allowed under § 502(f) of the Code are entitled to the same treatment as administrative expense claims. The Code also requires that fees owed under section 1930 of title 28, including quarterly and court fees, have been paid or will be paid on the effective date of the Plan.

The following chart lists the Debtor's estimated administrative expenses, and quarterly and court fees, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Professional Fees, subject to approved by the Court. | $10,000 | Payable from the proceeds of sale of the Property |
| Office of the U.S. Trustee Fees | 284.50 | Paid in full on the effective date of the Plan |
| TOTAL | 10,284.50 | |

**2. Priority tax claims**

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim pursuant to 11 U.S.C. § 511, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description<br>(Name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| None | | | Payment interval: |

| | | |
|---|---|---|
| [Monthly] payment | $ | |
| Begin date | | |
| End date | | |
| Interest rate | | % |
| Total payout amount | $ | |
| Payment interval | | |
| [Monthly] payment | $ | |
| Begin date | | |
| End date | | |
| Interest rate | | % |
| Total payout amount | $ | |

**C. Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**1. Classes of secured claims**

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

Here Debtor believes there is more than sufficient equity to pay secured creditor in full.

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 11 of 46

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1A | Secured Claim of: Tango Papa Development Company | No | Impaired | Monthly Payment: $23,750 |
| | Collateral Description: Property at 103, 104, 109 and 110 Sporleder Court, Los Gatos, CA (formerly 105 Newell Ave. Los Gatos) | | | Payments per stipulation attached hereto as Exhibit H. Payments continue post-confirmation in the amount of $23,750/month on the last day of each month with the entire principal balance of $2,850,000 due on or before April 30, 2024.

If allowed, claim is not paid in full by April 30, 2024, the Class 1 Claimant shall have relief from the automatic stay to proceed with its statutory remedies. |
| | Allowed Secured Amount: | | | Payments end: April 30, 2024 |
| | Priority of Lien: 1st position but junior to property taxes as Class 1B Trust Deed | | | Balloon Payment $2,850,000 due April 30, 2024, if Debtor performs to Stipulation and makes principal pay down by Oct. 31, 2023 |
| | Principal owed: $2,850,000 (if Debtor performs to terms of stipulation attached hereto as Exhibit H | | | Interest Rate 10% commencing Nov. 1, 2023. |
| | Pre-pet/. Arrearage: Note ballooned pre-petition | | | Treatment of Lien Paid per stipulation. |
| | Total Claim: $3,900,000 | | | |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1B | Secured Claim of: County of Santa Clara Tax Collector | No | Impaired | Monthly Payment: Lump sum payment |
| | Collateral Description: Property at 103, 104, 109 and 110 Sporleder Court, Los Gatos, CA (formerly 105 Newell Ave. Los Gatos) | | | Payments per stipulation attached hereto as Exhibit H should result in a pre-confirmation cure.

If not cured pre-confirmation, these are to be cured from the sale of the Property and paid concurrent with closing. |
| | Allowed Secured Amount: 25,600 | | | Payments end: Lump sum payment |

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 12 of 46

| | |
|---|---|
| Priority of Lien: 1st position senior to Class 1A Trust Deed | Balloon Payment $25,600 plus interest due Oct. 31, 2023 per Stipulation attached as Exhibit H. |
| Principal owed: 25,600 (if Debtor performs to terms of stipulation attached hereto as Exhibit H, there will be no pre-petition arrears. | Interest Rate 18% |
| Pre-pet/. Arrearage: Note ballooned pre-petition | Treatment of Lien to be paid per stipulation |
| Total Claim: $25,600 plus interest at 18% per annum | |

**2. Classes of priority unsecured claims**

The Code requires that, with respect to a class of claims of a kind referred to in §§ 507(a)(1), (4), (5), (6), and (7), each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim, unless a particular claimant agrees to a different treatment or the class agrees to deferred cash payments.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (7) of the Code and their proposed treatment under the Plan:

| Class # | Description | | Impairment? | Treatment |
|---|---|---|---|---|
| | Priority unsecured claim pursuant to section [insert] | None | ☐ Impaired<br>☐ Unimpaired | |
| | Total amount | $ | | |

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 13 of 46

### 3. Classes of general unsecured claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 2 which contains general unsecured claims against the Debtor:

| Class # | Description | Impairment? | Treatment |
|---------|-------------|-------------|-----------|
| 2 | General unsecured class | ☒ Impaired <br> ☐ Unimpaired | Payment <br><br> To be paid in full as follows: <br><br> Paid in full together with interest at 5.45% per annum, the latter of the Effective Date or on close of escrow of the sale of the Property. |

| Payments end | |
|--------------|--|
| Balloon payment | Yes |
| Interest rate from Effective Date | 5.45% |
| Estimated percent of claim paid | 100% |

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 14 of 46

## 4. Classes of equity interest holders

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company (*LLC*), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the classes of equity interest holders:

| Class # | Description | Impairment? | Treatment |
|---|---|---|---|
| 4 | Equity interest holders | ☐ Impaired<br>☒ Unimpaired | Retain membership interest |

## D. Means of Implementing the Plan

### 1. Source of payments

Payments and distributions under the Plan will be funded by sale of the Property to ZME within 45 days from the removal of the due diligence contingency (as set forth above, the due diligence contingency is to be removed within 15 days of the latter of Town of Los Gatos Public Works approval and issuance of permits for the onsite and offsite improvements or the Town of Los Gatos approval of four separate working drawings for the construction of the single family homes on the Property.

The possible scenarios and treatment of secured and general unsecured creditors under the plan are as follows:

| Scenario | Treatment of Secured Creditors | Treatment of General Unsecured Creditors |
|---|---|---|
| Property sold by April 30,, 2024 and proceeds sufficient to pay allowed secured claims in full and administrative claims and general unsecured creditors in full (expected result) | Pay allowed claims in full from escrow | Pay allowed claims in full the latter of the Effective Date or on close of escrow of sale of the Property. Unsecured creditors to be paid in full together with interest at the rate of 5.45% from the Effective Date. |
| Debtor fails to sell the Property by April 30, 2024, but can pay off the 1st loan from non-estate funds or from estate funds (subject to approval of the Court if before confirmation) | Secured Claimants paid in full | Allowed claims shall be paid in full together with interest at 5.45% per annum from the Effective Date the latter of the Effective Date or the date the secured claim is paid concurrent with the refinance of the Property or infusion of capital from non-estate funds. |
| Debtor fails to pay off Tango Papa Development Company by April 30, 2024 | Tango Papa Development Company has relief from the automatic stay | Debtor's principals shall fund Debtor which shall pay general unsecured creditors in full together with interest at the rate of 5.45% per annum from the Effective Date within 6 months of the Effective Date. |

## 2. Post-confirmation Management

The Post-Confirmation Management of the Debtor (including officers, directors, managing members, and other persons in control), and their compensation shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|------|-------------|---------------------|----------|--------------|
| Daniel Shaw | Manager | Yes | Manager | $0 |

### E. Risk Factors

The proposed Plan has the following risks.

<u>Market Risk</u>.        The real estate market is always uncertain. However, the Property is located in a prime location and the appraised values of the Property (Properties once subdivided) are as follows:

|  | Site after subdivision | With Built Improvements |
|------|-------------|--------------|
| Lot 1: | 2,470,000 | 5,300,000 |
| Lot 2 | 2,485,000 | 5,600,000 |
| Lot 3 | 2,210,000 | 4,800,000 |
| Lot 4 | 2,000,000 | 5,000,000 |
| TOTAL | $9,165,000 | $20,700,000 |

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 16 of 46

**F. Executory Contracts and Unexpired Leases**

There are no leases. The purchase contract with ZME is an executory contract which Debtor intends to assume through the plan unless a motion to assume is filed pre-confirmation.

The Plan in Article 6 lists all executory contracts and unexpired leases that the Debtor will assume, and if applicable assign, under the Plan. *Assumption* means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article 6 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption, and if applicable the assignment, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 or have not previously been assumed, and if applicable assigned, or are not the subject of a pending motion to assume, and if applicable assign, will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan

**The deadline for filing a Proof of Claim based on a claim arising from the rejection of a lease or contract is Dec. 4, 2023 (other than for government claimants)**

Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

/ / /

/ / /

Case: 23-50817   Doc# 31   Filed: 10/25/23   Entered: 10/25/23 17:35:01   Page 17 of 46

### G. Tax Consequences of Plan

**Creditors and equity interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.**

Creditors should consult with their tax advisers with respect to the tax consequences of the discharge of any obligation owed to them. The following are the anticipated tax consequences of the Plan:

(1)   Tax consequences to the Debtor of the Plan;

Debtor will have a long term capital gain for the gain, if any computed based on the difference between the net sales price after costs of sale and the basis in the Properties.

.

(2)   General tax consequences on creditors of any discharge, and the general tax consequences of receipt of plan consideration after confirmation.

The Plan contemplates that Creditors will be paid in full.  Hence no tax consequences are anticipated.

## IV. Confirmation Requirements and Procedures

To be confirmable, the Plan must meet the requirements listed in §1129 of the Code. These include the requirements that:

— the Plan must be proposed in good faith;

— if a class of claims is impaired under the Plan, at least one impaired class of claims must accept the Plan, without counting votes of insiders;

— the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and

— the Plan must be feasible.

These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that  the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. Except as stated in Part IV.A.3 below, a creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both

(1) allowed or allowed for voting purposes and

(2) impaired.

In this case, the Plan Proponent believes that classes 1 and 2 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

**1. What is an allowed claim or an allowed equity interest?**

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either

(1)    the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or

(2)    the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The non-governmental deadline for filing a proof of claim in this case is Jan. 23, 2024.**

**2. What is an impaired claim or impaired equity interest?**

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it

is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered *impaired* if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is not entitled to vote

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

**Even if you are not entitled to vote on the plan, you have a right to object to the confirmation of the Plan [and to the adequacy of the Disclosure Statement].**

### 4. Who can vote in more than one class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim. No such circumstances are contemplated by the Plan.

## B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless:

(1)  all impaired classes have voted to accept the Plan; or

(2)  at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and the Plan is eligible to be confirmed by "cram down" of the non-accepting classes, as discussed later in Section B.2.

### 1. Votes necessary for a class to accept the plan

A class of claims accepts the Plan if both of the following occur:

(1)  the holders of more than ½ of the allowed claims in the class, who vote, cast their votes to accept the Plan, and

(2)  the holders of at least ⅔ in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least ⅔ in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. Treatment of non-accepting classes of secured claims, general unsecured claims, and interests

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan  upon the request of the Plan proponent if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a *cram down* plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not *discriminate unfairly*, and

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 20 of 46

is *fair and equitable* toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a *cram down* confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

## C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as *Exhibit E*.

## D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1. Ability to initially fund plan

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as *Exhibit F*.

### 2. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.
The Plan Proponent has provided projected financial information. Those projections are listed in *Exhibit G*
The Plan Proponent's financial projections, based on conversations with his Realtor, is that the Properties will sell well before the deadline set forth in the Plan and the proceeds of sale will be sufficient to pay secured and general unsecured creditors in full.

*You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.*

/ / /

/ / /

/ / /

Case: 23-50817    Doc# 51    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 21 of 46

## V. Effect of Confirmation of Plan

**A.    Discharge of Debtor**

Check one box.

❑        **Discharge if the Debtor is an individual and 11 U.S.C. § 1141(d)(3) is not applicable.** Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**Discharge if the Debtor is a partnership and § 1141(d)(3) of the Code is not applicable.** On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code. However, the Debtor shall not be discharged from any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts imposed by the Plan.

☒❑      **Discharge if the Debtor is a corporation and § 1141(d)(3) is not applicable.** On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt:

       (i)        imposed by the Plan, or

       (ii)       to the extent provided in 11 U.S.C. § 1141(d)(6).

❑        **No Discharge if § 1141(d)(3) is applicable.** In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

**B. Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if

(1) the Plan has not been substantially consummated and
(2) the Court authorizes the proposed modifications after notice and a hearing.

/ / /

/ / /

**C. Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

**VI. Other Plan Provisions**

✖   /s/ Daniel J. Shaw
_____

Daniel J. Shaw, Manager
MDMH Partners, LLC


✖   /s/ Lars T. Fuller
_____

Lars T. Fuller, Attorney for Debtor

Case: 23-50817   Doc# 31   Filed: 10/25/23   Entered: 10/25/23 17:35:01   Page 23 of 46

# Exhibits

**Exhibit A:  Copy of Proposed Plan of Reorganization**

Case: 23-50817     Doc# 31     Filed: 10/25/23     Entered: 10/25/23 17:35:01     Page 24 of 46

**Fill in this information to identify the case:**

Debtor Name   MDMH Partners, LLC

United States Bankruptcy Court for the: Northern District of California

Case number:   23-50817-MEH

❑ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11    02/20

**MDMH Partners, LLC's  Plan of Reorganization, Dated Oct. 25, 2023**

### Article 1: Summary

This Plan of Reorganization (the "*Plan*") under chapter 11 of the Bankruptcy Code (the "*Code*") proposes to pay creditors of MDMH Partners, LLC (the "*Debtor*") from the sale of estate Property at 103, 104, 109 and 110 Sporleder Court, Los Gatos, CA (formerly identified as 105 Newell Avenue, Los Gatos, CA 95032 [Collectively referred to as "Properties"].

This Plan provides for:

| | |
|---|---|
| X | classes of priority claims & administrative claims; |
| 2 | classes of secured claims; |
| 1 | class of non-priority unsecured claims; and |
| 1 | class of equity security holders. |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100% on the dollar. This Plan also provides for the payment of administrative claims. There are
no known priority claims
All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

2.01   **Class 1A**................................    The claim of Tango Papa Development Company

2.02   **Class 1B**..................................    The claim of Santa Clara County Tax Collector

2.03   **Class 2**..................................    All non-priority unsecured claims allowed under § 502 of the Code.

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 25 of 46

2.04  **Class 3** ....................................  Equity interests of the Debtor.

| **Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees** |

3.01  **Unclassified claims**  Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02  **Administrative expense claims**  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full from the sale of the Improved Property or Unimproved Property or Properties subject to prior order of the Court.

3.03  **Priority tax claims**  There are no known priority claims

3.04  **Statutory fees**  All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

3.05  **Prospective quarterly fees**  All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

| **Article 4: Treatment of Claims and Interests Under the Plan** |

4.01  **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1A – Tango Papa Development Company | Impaired | Payments per stipulation attached hereto as Exhibit 1 (Exhibit H. to the Disclosure Statement)Payments continue post-confirmation in the amount of $23,750/month on the last day of each month with the entire principal balance of $2,850,000 due on or before April 30, 2024.<br><br>If allowed claim is not paid in full by April 30, 2024, the Class 1 Claimant shall have relief from the automatic stay to proceed with its statutory remedies. |
| Class 1B – Secured Claim of The County of Santa Clara Tax collector | Impaired | Payments per stipulation attached hereto as Exhibit 1 (Exhibit H to the Disclosure Statement).<br><br>If pre-petition property tax arrears are not cured pre-petition, this shall be paid in full, together with interest at 18% per annum, from the sale of the Property and paid concurrent with Closing. |

| Class 2 – General Unsecured Creditors | Impaired | To be paid in full as follows:<br><br>Paid in full together with interest at 5.45% per annum, the latter of the Effective Date or on close of escrow on the sale of the Property. |
|---|---|---|
| Class 4 – Equity Security Holder | Impaired | Shall retain all membership interest in the Debtor. |

## Article 5: Allowance and Disallowance of Claims

**5.01**  **Disputed claim**

A *disputed claim* is a claim that has not been allowed or disallowed [by a final non- appealable order], and as to which either:

(i)   a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii)  no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02**  **Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed.

**5.03**  **Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

**6.01**  **Assumed executory contracts and unexpired leases**

(a)  The Debtor assumes the following executory contract as of the effective date:

The contract for the sale of the Property to ZME Investors Two.

(b)  Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have assumed all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than ninety (90) days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

Generally, The Plan will be funded from the sale of the Property, within 6 months of the Effective Date or in the unlikely event the proceeds of sale are insufficient to pay all allowed claims in full together with interest as set forth in the Plan, from payments over time.

More specifically, the Plan will be funded according to the Scenarios set forth in the table below:

| Scenario | Treatment of Secured Creditors | Treatment of General Unsecured Creditors |
|---|---|---|
| Property sold by April 30, 2024 and proceeds sufficient to pay allowed secured claims in full and administrative claims and general unsecured creditors in full (expected result) | Pay allowed claims in full from escrow | Pay allowed claims in full the latter of the Effective Date or on close of escrow of sale of the Property. Unsecured creditors to be paid in full together with interest at the rate of 5.45% from the Effective Date. |
| Debtor fails to sell the Property by April 30, 2024 but is able to pay off the 1st loan from non-estate funds or from estate funds (subject to approval of the Court if before confirmation | Pay allowed claim in full from non-estate funds or refinance of the Property | Allowed claims shall be paid in full together with interest at 5.45% per annum from the Effective Date the latter of the Effective Date or the date the secured claim is paid concurrent with the refinance of the Property or infusion of capital from non-estate funds. |
| Debtor fails to pay off Tango Papa Development Company by April 30, 2024 | Tango Papa Development Company has relief from the automatic stay | Debtor's principals shall fund Debtor which shall pay general unsecured creditors in full together with interest at the rate of 5.45% per annum from the Effective Date within 6 months of the Effective Date. |

Case: 23-50817   Doc# 31   Filed: 10/25/23   Entered: 10/25/23 17:35:01   Page 28 of 46

## Article 8: General Provisions

| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
|---|---|---|
| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is fourteen (14) days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.07 | **Corporate governance** | Not Applicable |
| 8.08 | **Retention of Jurisdiction** | The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether The Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan. |

## Article 9: Discharge

On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

**Article 10: Other Provisions**

> As to the claim of Tango Papa Development, LLC in the event of any conflict between the terms of this Plan and the Settlement Agreement attached hereto as Exhibit "1", the settlement Agreement shall control.

Respectfully submitted,

 /s/ Daniel J. Shaw
Daniel J. Shaw, Manager
MDMH Partners, LLC

✗ /s/ Lars T. Fuller
Lars T. Fuller, Attorney for Debtor

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is dated October 06, 2023, for reference purposes only and is made by and between Tango Papa Development, LLC, a California limited liability company ("**Secured Party**") and MDMH Partners, LLC, a California limited liability company ("**Debtor**"), each a "**Party**" and collectively the "**Parties**".

## RECITALS

A.      The term "**Property**" means that certain real property located at 103, 104, 109 & 110 Sporleder Court, Los Gatos, California, consisting of four parcels known as APN 409-24-035, 036, 037 and 038. On March 2, 2022, a Grant Deed was recorded transferring title to the Property from Secured Party to Debtor. In connection with the property sale, Debtor executed a Note Secured by Deed of Trust in favor of Secured Party in the amount of $3,900,000 ("**Note**"). Debtor, as Trustor, executed a Deed of Trust in favor of Secured Party, as Beneficiary ("**Deed of Trust**") which was recorded in Santa Clara County on March 2, 2022, as instrument number 25251500.

B.      Debtor failed to make the payments required by the Note and Secured Party authorized Old Republic Title Company, as Trustee under the Deed of Trust, to commence a nonjudicial foreclosure. The Trustee sale was set for July 28, 2023.

C.      On July 27, 2023, Debtor filed a Chapter 11 Voluntary Petition in the United States Bankruptcy Court, Northern District of California, San Jose Division ("**Bankruptcy Court**"), Case Number 23-50817 ("**Bankrupty Case**").

D.      Secured Party and Debtor desire to enter into this Agreement, which shall be adopted as an order of the Bankruptcy Court (as provided below), in order to resolve certain disputes (including without limitations, the absence of adequate protection) between the Parties in the Bankruptcy Case on the terms and conditions set forth in this Agreement. These Recitals are hereby incorporated into and shall be a part of this Agreement.

## AGREEMENT

**NOW THEREFORE**, in consideration of the mutual promises and covenants set forth herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, Secured Party and Debtor agree as follows:

1.      **Interest Payments Through August 31, 2023.** On or before October 31, 2023, Debtor shall pay to Secured Party the amount of $157,625, which pays the accrued interest under the Note through August 31, 2023.

**2. Interest Payment Through September 30, 2023.** On or before October 31, 2023, Debtor shall pay to Secured Party the amount of $19,500 for balance of interest under the Note (after adequate protection payment) for the month of September 2023 ($3,900,000 @ 8% interest = $26,000 - $6,500 = $19,500).

**2(a). Interest Payment Through October 31, 2023.** On or before October 31, 2023, Debtor shall pay to Secured Party the amount of $26,000 for interest under the Note for the month of October 2023 ($3,900,000 @ 8% interest = $26,000).

**3. Principal Payment.** On or before October 31, 2023, Debtor shall pay to Secured Party the amount of One Million Fifty Thousand Dollars ($1,050,000) as a principal payment, which payment reduces the outstanding principal amount due under the Note to approximately $2,850,000 ($3,900,000 - $1,050,000 = $2,850,000).

**4. Unpaid Property Taxes.** On or before October 23, 2023, Debtor shall pay to the Santa Clara County Tax Collector all delinquent property taxes due. Debtor shall provide proof of such payment to Creditor. Debtor shall provide to Creditor proof of payment of the property tax installment due November 1st, 2023 (and delinquent on December 10, 2023) by November 30th, 2023.

**5. Foreclosure Costs.** On or before October 31, 2023, Debtor shall pay to Secured Party the amount of $11,853.26 for nonjudicial foreclosure costs incurred by Secured Party with Old Republic Title Company. Secured Party will deliver this amount to Old Republic Title Company.

**6. Summary of Payments due September 30, 2023.** The total amount that Debtor is required to pay Secured Party on or before September 30, 2023 is as follows:

| | |
|---|---|
| Accrued interest through August 2023 | $157,625 |
| Interest for September 2023 | $19,500 |
| Interest for October 2023 | $26,000 |
| Principal payment | $1,050,000 |
| Foreclosure costs | $11,853.26 |

| **Total due October 31, 2023** | **$1,264,978.26** |
|---|---|

**7. Interest Payments for October 2023 – April 2024.** Provided that Debtor makes the payments required by this Agreement, commencing November 30, 2023, interest payments on the Note shall equal $23,750 per month ($2,850,000 @ 10% = $23,750 per month). Commencing November 30, 2023, Debtor shall pay to Secured Party the following interest payments:

| | |
|---|---|
| November 30, 2023 | $23,750 |
| December 31, 2023 | $23,750 |
| January 31, 2024 | $23,750 |

|  |  |
|---|---|
| February 29, 2024 | $23,750 |
| March 31, 2024 | $23,750 |
| April 30, 2024 | $23,750 |

**8.     Final Principal Payment**. Debtor shall pay to Secured Party the balance of the principal ($2,850,000) on or before April 30, 2024.

**9.     Method of Payment.** All payments required under this Agreement shall be made from Debtor to Secured Party by wire transfer (checks are not acceptable). Time is of the essence as to all dates and times stated in this Agreement. The wiring instructions for Secured Party to receive funds are as follows:

INCOMING WIRE INSTRUCTIONS:

Wells Fargo Bank
420 Montgomery Street
San Francisco, CA 94104
Phone 800-869-3557
ABA Routing Number: 121000248

Beneficiary:    Wells Fargo Clearing Services, LLC
                1 North Jefferson Ave.
                St. Louis, Missouri 63103
                Account # 4122023377

Further Credit to:     Thomas A. Grant
                       Account # 7949 - 4600

**10.     Default**. If any payment is not made as and when due under this Agreement (each a "**Default**"), then Secured Party shall provide written notice to Debtor of such Default ("**Notice**") and Debtor shall have five (5) calendar days following receipt of the Notice to cure the Default by making the payment described in the Notice, which payment shall be made by wire transfer. The Notice shall be deemed delivered to Debtor if sent to Debtor's attorney Lars Fuller by e-mail at lars@fullerlawfirm.net.

**11.     Failure to Cure Default, Relief from Stay**. If Debtor does not cure the Default within such five (5) day period, then immediately, without any further action by Secured Party or order of the Bankruptcy Court , the Secured Party is granted relief from the automatic stay imposed by 11 U.S.C. 362 and any waiting period imposed by Bankruptcy Rule 4001(a)(3) which is hereby waived, and Secured Party may proceed with the nonjudicial foreclosure and Trustee's sale of the Property.

**12.     Waiver**. To the maximum extent permitted by law, Debtor waives any and all rights to contest the relief from stay granted in this Agreement in the event of an uncured Default.

13. **Authority.** Each Party warrants and represents to the other Party that each individual executing this Agreement on behalf of such Party is duly and fully authorized to enter into this Agreement on behalf of such entity, that this Agreement will be binding upon such entity and that the execution of this Agreement has been approved and ratified as required by the organizational documents of such entity.

14. **Successors and assigns.** This Agreement shall be binding upon Secured Party and Debtor and their respective successors and assigns.

15. **Attorney's fees.** In the event of any legal or equitable action arising out of or to enforce this Agreement, the prevailing party shall be entitled to recover attorney's fees and costs.

16. **Execution.** The Parties may execute this Agreement in two or more counterparts, which shall, in the aggregate, be signed by all the Parties; each counterpart shall be deemed an original instrument as against any Party who has signed it. Except where notarized signatures are necessary, facsimile, photocopied and/or electronically transmitted signatures are equivalent to original signatures for all purposes of this Agreement.

17. **Condition Precedent.** This Agreement shall become effective on the date that the Parties have executed this Agreement and a Judge of the Bankruptcy Court in the Bankruptcy Case approves the Agreement and adopts each and every provision of this Agreement as an Order of the Bankruptcy Court (the "**Order**"). Debtor, through Debtor's counsel, shall submit this Agreement to the Bankruptcy Court for approval and issuance of the required Order no later than October 13, 2023. If no such Order is entered on or before October 19, 2023 at 5:00 p.m. California time, then this Agreement be deemed null, void and of no force or effect.

**IN WITNESS WHEREOF**, Debtor and Secured Party hereby agree to the terms and conditions of this Agreement.

SECURED PARTY:
Tango Papa Development, LLC,
a California limited liability company

By: _____

Thomas Grant, Manager

Date: /0 - //-2023, 2023

DEBTOR:
MDMH Partners, LLC,
a California limited liability
company

By: _____

Daniel J. Shaw, Manager and
Responsible Individual

Date: ___10__/_06__, 2023

**Exhibit B: Identity and Value of Material Assets of Debtor**

| **Assets** | **Basis of Valuation** | **Value** |
|---|---|---|
| a.  Cash in bank | | 288 |
| b.  Real Properties | opinion | 8,057,000[1] |
| (103, 104, 109 and 110 Sporleder Court, Los Gatos, CA) | | |
| | | |
| Total Assets | | $8,057,288 |

---

[1] Appraised value 9,165,000 but as subdivision. Debtor's opinion $6,950,000 as of petition date. Since petition date, on-site improvements approved, permit issued and work commenced. Hence average value used..

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 36 of 46

**Exhibit C: Prepetition Financial Statements**


See attached.

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 37 of 46

# MDMH Partners, LLC
# Balance Sheet
## As of July 24, 2023

|  | Jul 24, 23 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| **Checking - Chase Bank** | 287.63 |
| **Total Checking/Savings** | 287.63 |
| **Total Current Assets** | 287.63 |
| **Fixed Assets** | |
| **Elks Project** | |
| **Financing Costs** | 143,124.66 |
| **Land** | 5,200,000.00 |
| **Other Costs** | 222,738.00 |
| **Property Taxes** | 58,149.71 |
| **Total Elks Project** | 5,624,012.37 |
| **Total Fixed Assets** | 5,624,012.37 |
| **TOTAL ASSETS** | **5,624,300.00** |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Other Current Liabilities** | |
| **Option Money - ZME** | 3,000,000.00 |
| **Total Other Current Liabilities** | 3,000,000.00 |
| **Total Current Liabilities** | 3,000,000.00 |
| **Long Term Liabilities** | |
| **N/P - Seller (TogoPapa Dev LLC)** | 3,900,000.00 |
| **Total Long Term Liabilities** | 3,900,000.00 |
| **Total Liabilities** | 6,900,000.00 |
| **Equity** | |
| **Member Capital Accounts** | |
| **Bennett Shaw Trust (414)** | -419,660.00 |
| **Kieran Shaw Trust (406)** | -419,660.00 |
| **Ronan Shaw Trust (398)** | -419,660.00 |
| **Total Member Capital Accounts** | -1,258,980.00 |
| **Net Income** | -16,720.00 |
| **Total Equity** | -1,275,700.00 |
| **TOTAL LIABILITIES & EQUITY** | **5,624,300.00** |

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 38 of 46

**Exhibit D: [Most Recently Filed Post-petition Operating Report]**
**[Summary of Post petition Operating Reports]**

Debtor has not filed its MORs.

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 39 of
46

**Exhibit E: Liquidation Analysis**


**Plan Proponent's Estimated Liquidation Value of Assets**


**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $    288 |
| b. | Accounts receivable | $0 |
| c. | Inventory | $0 |
| d. | Office furniture and equipment | $0 |
| e. | Machinery and equipment – Farm Tractor | $0 |
| f. | Automobiles – Farm Truck | $0 |
| g. | Property and Entitlements at 105 Newell Ave. Los Gatos | $8,057,000 |
| h. | Customer list | $0 |
| i. | Investment property  (such as stocks, bonds or other financial assets) | $0 |
| j. | Lawsuits or other claims against third-parties | $0 |
| K | Other intangibles (such as avoiding powers actions) | $0 |

| | | |
|---|---|---|
| **Total Assets at Liquidation Value** | | **$8,057,288** |
| Less: | Cost of Sale of Real Property (6% including escrow) | − | $   483,420 |
| Less: | Property Taxes | − | $   25,600 |
| Less: | Secured creditors' recoveries - 1st Trust Deed | − | $3,900,000 |
| Less: | Chapter 7 trustee fees and expenses | − | $264,968 |
| Less: | Chapter 11 administrative expenses | − | $10,000 |
| Less: | Priority claims, excluding administrative expense claims | − | $ |
| Less: | Estimated tax consequences of sale | − | $593,395[2] |

| | | |
|---|---|---|
| (1) | Balance for unsecured claims | $ 2,779,905 |
| (2) | Total dollar amount of unsecured claims | $ 597,925 |

| | |
|---|---|
| **Percentage of claims which unsecured creditors would receive or retain in a chapter 7 liquidation** | **100%** |
| **Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:** | **100%** |

---

[2] Calculated as $8,057,000 (sale of real property) – $483,420 (commissions and closing) – $5,200,000 (basis) = $720,000; Capital gain Fed 15% and state 10% = 593,395.

**Exhibit F: Cash on hand on the effective date of the Plan**

| | | $288 |
|---|---|---|
| **Cash on hand on effective date of plan** | | |
| Less: | Amount of administrative expenses payable on effective date of the Plan | – $288 |
| Less: | Amount of statutory costs and charges | – $0 |
| Less: | Amount of cure payments for executory contracts | – $0 |
| Less: | Other Plan payments due on effective date of the Plan – FTB Claim | – $0 |
| **Balance after paying these amounts** | | $288 |

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

| | |
|---|---|
| Cash in Debtor's bank account now | $288 |
| Net earnings between now and effective date of the Plan [Rent] | $0 |
| Borrowing | $0 |
| Capital contributions | As needed |
| Payment of authorized expenses (UST fees, property taxes, Vazquez) | – $ 0 |
| **Total** Effective Day Feasibility | Capital contribution |

**Exhibit G: Projections of Cash Flow for Post-Confirmation Period and Earnings to Demonstrate Feasibility**

The plan will be funded from the sale of Debtor's Property to ZME Investors Two.

**Exhibit H – Settlement Agreement**

See attached.

Case: 23-50817    Doc# 31    Filed: 10/25/23    Entered: 10/25/23 17:35:01    Page 42 of
46

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is dated October 06, 2023, for reference purposes only and is made by and between Tango Papa Development, LLC, a California limited liability company ("**Secured Party**") and MDMH Partners, LLC, a California limited liability company ("**Debtor**"), each a "**Party**" and collectively the "**Parties**".

## RECITALS

A.    The term "**Property**" means that certain real property located at 103, 104, 109 & 110 Sporleder Court, Los Gatos, California, consisting of four parcels known as APN 409-24-035, 036, 037 and 038. On March 2, 2022, a Grant Deed was recorded transferring title to the Property from Secured Party to Debtor. In connection with the property sale, Debtor executed a Note Secured by Deed of Trust in favor of Secured Party in the amount of $3,900,000 ("**Note**"). Debtor, as Trustor, executed a Deed of Trust in favor of Secured Party, as Beneficiary ("**Deed of Trust**") which was recorded in Santa Clara County on March 2, 2022, as instrument number 25251500.

B.    Debtor failed to make the payments required by the Note and Secured Party authorized Old Republic Title Company, as Trustee under the Deed of Trust, to commence a nonjudicial foreclosure. The Trustee sale was set for July 28, 2023.

C.    On July 27, 2023, Debtor filed a Chapter 11 Voluntary Petition in the United States Bankruptcy Court, Northern District of California, San Jose Division ("**Bankruptcy Court**"), Case Number 23-50817 ("**Bankrupty Case**").

D.    Secured Party and Debtor desire to enter into this Agreement, which shall be adopted as an order of the Bankruptcy Court (as provided below), in order to resolve certain disputes (including without limitations, the absence of adequate protection) between the Parties in the Bankruptcy Case on the terms and conditions set forth in this Agreement. These Recitals are hereby incorporated into and shall be a part of this Agreement.

## AGREEMENT

**NOW THEREFORE**, in consideration of the mutual promises and covenants set forth herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, Secured Party and Debtor agree as follows:

1.    **Interest Payments Through August 31, 2023.** On or before October 31, 2023, Debtor shall pay to Secured Party the amount of $157,625, which pays the accrued interest under the Note through August 31, 2023.

2. **Interest Payment Through September 30, 2023.** On or before October 31, 2023, Debtor shall pay to Secured Party the amount of $19,500 for balance of interest under the Note (after adequate protection payment) for the month of September 2023 ($3,900,000 @ 8% interest = $26,000 - $6,500 = $19,500).

2(a). **Interest Payment Through October 31, 2023.** On or before October 31, 2023, Debtor shall pay to Secured Party the amount of $26,000 for interest under the Note for the month of October 2023 ($3,900,000 @ 8% interest = $26,000).

3. **Principal Payment.** On or before October 31, 2023, Debtor shall pay to Secured Party the amount of One Million Fifty Thousand Dollars ($1,050,000) as a principal payment, which payment reduces the outstanding principal amount due under the Note to approximately $2,850,000 ($3,900,000 - $1,050,000 = $2,850,000).

4. **Unpaid Property Taxes.** On or before October 23, 2023, Debtor shall pay to the Santa Clara County Tax Collector all delinquent property taxes due. Debtor shall provide proof of such payment to Creditor. Debtor shall provide to Creditor proof of payment of the property tax installment due November 1st, 2023 (and delinquent on December 10, 2023) by November 30th, 2023.

5. **Foreclosure Costs.** On or before October 31, 2023, Debtor shall pay to Secured Party the amount of $11,853.26 for nonjudicial foreclosure costs incurred by Secured Party with Old Republic Title Company. Secured Party will deliver this amount to Old Republic Title Company.

6. **Summary of Payments due September 30, 2023**. The total amount that Debtor is required to pay Secured Party on or before September 30, 2023 is as follows:

| | |
|---|---|
| Accrued interest through August 2023 | $157,625 |
| Interest for September 2023 | $19,500 |
| Interest for October 2023 | $26,000 |
| Principal payment | $1,050,000 |
| Foreclosure costs | $11,853.26 |
| **Total due October 31, 2023** | **$1,264,978.26** |

7. **Interest Payments for October 2023 – April 2024.** Provided that Debtor makes the payments required by this Agreement, commencing November 30, 2023, interest payments on the Note shall equal $23,750 per month ($2,850,000 @ 10% = $23,750 per month). Commencing November 30, 2023, Debtor shall pay to Secured Party the following interest payments:

| | |
|---|---|
| November 30, 2023 | $23,750 |
| December 31, 2023 | $23,750 |
| January 31, 2024 | $23,750 |

| February 29, 2024 | $23,750 |
| March 31, 2024 | $23,750 |
| April 30, 2024 | $23,750 |

**8.     Final Principal Payment.** Debtor shall pay to Secured Party the balance of the principal ($2,850,000) on or before April 30, 2024.

**9.     Method of Payment.** All payments required under this Agreement shall be made from Debtor to Secured Party by wire transfer (checks are not acceptable). Time is of the essence as to all dates and times stated in this Agreement. The wiring instructions for Secured Party to receive funds are as follows:

INCOMING WIRE INSTRUCTIONS:

Wells Fargo Bank
420 Montgomery Street
San Francisco, CA 94104
Phone 800-869-3557
ABA Routing Number: 121000248

Beneficiary:   Wells Fargo Clearing Services, LLC
1 North Jefferson Ave.
St. Louis, Missouri 63103
Account # 4122023377

Further Credit to:     Thomas A. Grant
Account # 7949 - 4600

**10.     Default.** If any payment is not made as and when due under this Agreement (each a "**Default**"), then Secured Party shall provide written notice to Debtor of such Default ("**Notice**") and Debtor shall have five (5) calendar days following receipt of the Notice to cure the Default by making the payment described in the Notice, which payment shall be made by wire transfer. The Notice shall be deemed delivered to Debtor if sent to Debtor's attorney Lars Fuller by e-mail at lars@fullerlawfirm.net.

**11.     Failure to Cure Default, Relief from Stay.** If Debtor does not cure the Default within such five (5) day period, then immediately, without any further action by Secured Party or order of the Bankruptcy Court , the Secured Party is granted relief from the automatic stay imposed by 11 U.S.C. 362 and any waiting period imposed by Bankruptcy Rule 4001(a)(3) which is hereby waived, and Secured Party may proceed with the nonjudicial foreclosure and Trustee's sale of the Property.

**12.     Waiver.** To the maximum extent permitted by law, Debtor waives any and all rights to contest the relief from stay granted in this Agreement in the event of an uncured Default.

13.    **Authority.** Each Party warrants and represents to the other Party that each individual executing this Agreement on behalf of such Party is duly and fully authorized to enter into this Agreement on behalf of such entity, that this Agreement will be binding upon such entity and that the execution of this Agreement has been approved and ratified as required by the organizational documents of such entity.

14.    **Successors and assigns**. This Agreement shall be binding upon Secured Party and Debtor and their respective successors and assigns.

15.    **Attorney's fees**. In the event of any legal or equitable action arising out of or to enforce this Agreement, the prevailing party shall be entitled to recover attorney's fees and costs.

16.    **Execution**. The Parties may execute this Agreement in two or more counterparts, which shall, in the aggregate, be signed by all the Parties; each counterpart shall be deemed an original instrument as against any Party who has signed it. Except where notarized signatures are necessary, facsimile, photocopied and/or electronically transmitted signatures are equivalent to original signatures for all purposes of this Agreement.

17.    **Condition Precedent.** This Agreement shall become effective on the date that the Parties have executed this Agreement and a Judge of the Bankruptcy Court in the Bankruptcy Case approves the Agreement and adopts each and every provision of this Agreement as an Order of the Bankruptcy Court (the "**Order**"). Debtor, through Debtor's counsel, shall submit this Agreement to the Bankruptcy Court for approval and issuance of the required Order no later than October 13, 2023. If no such Order is entered on or before October 19, 2023 at 5:00 p.m. California time, then this Agreement be deemed null, void and of no force or effect.

    **IN WITNESS WHEREOF**, Debtor and Secured Party hereby agree to the terms and conditions of this Agreement.

**SECURED PARTY:**
Tango Papa Development, LLC,
a California limited liability company

By: ⟋⟍⟍⟍⟍⟋

Thomas Grant, Manager

Date: /0 – // – 2023, 2023

**DEBTOR:**
MDMH Partners, LLC,
a California limited liability
company

By: ⟍⟍⟍⟍

Daniel J. Shaw, Manager and
Responsible Individual

Date: ___ 10 / 06 ___, 2023